IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 23, 2005 Session

## RODNEY WILSON, ET AL. v. GERALD W. PICKENS

**Direct Appeal from the Circuit Court for Shelby County**
**No. 301614 T.D.     John R. McCarroll, Jr., Judge**

---

**No. W2004-02966-COA-R3-CV - Filed October 18, 2005**

---

The trial court determined Plaintiffs had standing to bring this malpractice action against their attorney and that they properly filed the action within the statute of limitations under the discovery rule. The trial court apportioned fault between Plaintiffs, Defendant, and nonparty Shelby County. The court awarded Plaintiffs damages for costs incurred, but did not award damages for lost property value. We affirm the trial court's determination that Plaintiffs had standing and brought their action within the limitations period. We reverse the trial court's finding regarding causation, and hold Plaintiffs were at least 50% at fault in this case. Judgment for Plaintiffs is reversed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Sam F. Cole, Jr., Memphis, Tennessee, for the appellant, Gerald W. Pickens.

Mimi Phillips and R. H. Chockley, Memphis, Tennessee, for the appellees, Rodney Wilson and Robbie Wilson.

### OPINION

In 1975, Plaintiffs Rodney Wilson (Mr. Wilson) and Robbie Wilson (Ms. Wilson, collectively, "the Wilsons") purchased a small house situated on an approximately seven-acre parcel of land in an unincorporated area of northern Shelby County. The property is zoned within the Shelby County Agricultural (AG) District, which requires a minimum building lot size of two acres. The Wilsons never lived in the house, but rented to several tenants before renting the house to Marshall and Rosa Law ("the Laws") in 1984. In 1985, the Wilsons decided to build an additional home ("the big house"), for use as their residence, on the land. They obtained the necessary permits from Shelby County and completed construction of the big house in August 1986. Shelby County

assigned a new house number, street address, and separate tax parcel number to the big house. A few months later, a tornado destroyed the big house. The Wilsons again received permits from Shelby County and rebuilt the big house in 1988. When the house was nearly complete, an unknown person, presumably a Shelby County official, apparently saw the house under construction and stated to Mr. Wilson that he could not build a house on the property. Mr. Wilson responded that he already had a permit, and no further action was taken by either the Wilsons or Shelby County.

In late 1991 or early 1992, the Wilsons decided to sell the original house to the Laws and hired their attorney, Gerald W. Pickens (Mr. Pickens), to handle the sale. Based on a survey completed in 1985, which divided the property into a 1.01 acre lot and a 6.069 acre lot and showed the location of the original house and the Wilsons' proposed new house, Mr. Pickens prepared a real estate note, deed of trust, and contract conveying the original small house and 1.01 acres to the Laws, with title being "conveyed subject to all restrictions, easements and covenants of record, and subject to zoning ordinances or laws of any governmental authority." The warranty deed conveying the property to the Laws was executed on February 15, 1992.

In late 1997 or early 1998, the Laws decided to renovate their home and sought the appropriate building permits from Shelby County. They were denied the permits and construction loans, however, because their lot did not meet the minimum two acres necessary for a building lot on the property, which was zoned AG. The Laws retained legal counsel who advised the Wilsons by letter of April 14, 1998, that they had "illegally subdivided [their] property and sold an illegal lot" to the Laws. The Laws filed an action for breach of warranty against the Wilsons, and the Wilsons filed suit against Mr. Pickens for legal malpractice on March 31, 1999. The Wilsons subsequently settled the action brought against them by the Laws by formally subdividing the property and conveying an additional one-acre parcel to the Laws.

In their complaint, the Wilsons alleged Mr. Pickens' professional negligence caused damages arising from the sale of an illegal lot. They prayed for a judgment of indemnity ordering Mr. Pickens to pay all sums necessary to rectify the illegal sale and to defend the lawsuit brought against them by the Laws. The trial court heard the matter in April 2004 and entered judgment on June 18, 2004. The trial court found that the Wilsons had standing to sue Mr. Pickens and that they had properly filed their claim within the statute of limitations under the discovery rule. The trial court also found Mr. Pickens liable for damages arising from professional malpractice. However, the trial court apportioned 20% of fault to Shelby County for issuing the Wilsons building permits in violation of zoning regulations in1985 and 1988. The trial court further apportioned 20% of fault to the Wilsons, who were presumed to know the zoning laws and due to their notice from the unidentified Shelby County employee that they could not build their house on the lot. The trial court apportioned the remaining 60% of fault to Mr. Pickens, and entered a judgment of $12,242.20 against Mr. Pickens for costs associated with the re-subdivision of the property and legal fees. However, the trial court found the Wilsons had failed to prove damages resulting from the loss of one acre of property. Mr. Pickens filed a timely notice of appeal to this Court.

**Issues Presented**

Mr. Pickens presents the following issues, as we slightly restate them, for our review:

(1)     Whether the trial court erred in determining that the Wilsons had standing to sue Mr. Pickens.

(2)     Whether the trial court erred by finding that the Wilsons filed their suit within the statute of limitations under the discovery rule.

(3)     Whether the trial court erred by determining the Wilsons' damages were proximately caused by professional malpractice.

(4)     Whether the trial court erred in finding the Wilson's were not at least 50% at fault.

The Wilsons raise the following additional issues:

(1)     Whether the trial court erred in failing to award damages for lost value to the Wilsons' property.

(2)     Whether the trial court erred in not apportioning 100% of fault to Mr. Pickens.

**Standard of Review**

We review the trial court's findings of fact *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, appellate courts will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Our review of the trial court's conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court's application of law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

**Standing**

We turn first to Mr. Pickens' contention that the Wilsons did not have standing to bring their cause of action against Mr. Pickens for professional malpractice. Mr. Pickens' argument, as we understand it, is that, assuming the sale of real property to the Laws was in violation of the zoning

regulations, it was the Laws and not the Wilsons who suffered damages and had standing to bring a cause of action against Mr. Pickens. We disagree.

In a legal malpractice case, a plaintiff has been injured where there has been the imposition of a liability against him or he has suffered the loss of "a legal right, remedy or interest." *Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). An injury also occurs where the plaintiff is "forced to take some action or otherwise suffer 'some actual inconvenience,' such as incurring an expense, as a result of the defendant's negligent or wrongful act." *Id.* (quoting *State v. McClellan*, 85 S.W. 267, 270 (Tenn. 1905)).

In this case, the Wilsons contend that they conveyed property in violation of the zoning and subdivision regulations because Mr. Pickens failed to inform them of these regulations. They allege that Mr. Pickens' failure to inform them of the zoning and subdivision restrictions constitutes professional malpractice. In their complaint, the Wilsons sought a judgment of indemnity against any judgment which might be entered against them in favor of the Laws and for amounts necessary to rectify the regulatory violation. The Laws did, in fact, bring a cause of action against the Wilsons, which the Wilsons settled by properly subdividing the property and conveying an additional acre to the Laws.

Although the questions of damages, if any, and proximate cause were matters to be adjudicated at trial, the Wilsons alleged both injury and causation in their complaint. Further, it is undisputed that the Wilsons, and not the Laws, were Mr. Pickens clients. Without opining on whether the Laws would have had standing to bring a cause of action against Mr. Pickens, we agree with the trial court that the Wilsons had standing to bring this lawsuit.

## Statute of Limitations

Tennessee Code Annotated § 28-3-104(a)(2) provides a limitations period of one year for legal malpractice actions. The limitations period, however, is subject to the discovery rule, under which an action accrues from the time the plaintiff knows or should know, in the exercise of reasonable care, that he has sustained an injury as a result of the defendant's wrongful act. *Kohl & Co.*, 977 S.W.2d at 532. The plaintiff's knowledge of his injury may be established by actual or constructive knowledge. *Id.* Actual knowledge of legal malpractice may be found, for example, when the plaintiff is informed by another attorney that malpractice has occurred. *Id.* Constructive knowledge may be found, however, where the plaintiff reasonably is aware of facts that reasonably should put him on notice that he has been injured as a result of the defendant's conduct. *Id.* at 533. It is not necessary that the plaintiff know that the defendant's conduct was, in fact, below the standard of care, and the plaintiff may not delay the filing of a suit until all the consequences of the alleged malpractice are actually known. *Id.* Thus, the plaintiff must be aware of facts which reasonably put him on notice that he has suffered an injury and that the injury resulted from the alleged professional negligence.

Significantly, the foregoing requires an actual injury. As this Court has noted,

the rules governing when a person suffers legally cognizable injury from litigation malpractice must take into account that not every misstep leads to a fall. Because negligence without injury is not actionable, the legal malpractice statute of limitations does not begin to run until an attorney's negligence has actually injured the client.

*Cherry v. Williams*, 36 S.W.3d 78, 84 (Tenn. Ct. App. 2000). Without an actual injury or damages which can be redressed by the court, a person cannot establish standing to bring his action. *E.g., Petition of Youngblood*, 895 S.W.2d 322, 326 (Tenn. 1995)(citations omitted).

In this case, Mr. Pickens asserts the Wilsons' cause of action accrued on February 7, 1992, the day they contracted to sell the 1.01 acre lot to the Laws. He asserts that the Wilsons' action is barred because they "were required, as a matter of law, to have knowledge of the laws applicable to the land they owned." He contends that the Wilsons reasonably should have known that a two-acre minimum was required to subdivide the property to the Laws at the time of the sale in 1992. The Wilsons, on the other hand, contend they were unaware of any problem with the conveyance to the Laws until notified by the Laws' legal counsel in April 1998.

Mr. Pickens' argument, as we perceive it, goes to causation rather than discovery. Regardless of whether Mr. Pickens' alleged failure to advise the Wilsons of the zoning and subdivision requirements was the proximate cause of the Wilsons' injury, the Wilsons suffered no injury until April 14, 1998. The statute of limitations did not begin to run until the alleged negligence resulted in actual damages.

### Causation and Fault

We next turn to whether Mr. Pickens alleged failure to inform the Wilsons of the Shelby County zoning and subdivision requirements was the proximate cause of the Wilsons' injury. Mr. Pickens asserts that he advised the Wilsons that "it was necessary to have two acres in a subdivided lot or a four acre unsubdivided lot to obtain a building permit." The Wilsons, however, assert Mr. Pickens never discussed the legality of the transaction, building permit issues, or subdivision or lot size restrictions. In the absence of any documentary evidence, the factual determination of whether Mr. Pickens advised the Wilsons of these requirements and regulations requires a determination of credibility. Implicit in the trial court's judgment is a credibility determination in favor of the Wilsons. There is no evidence which would warrant reversal of the trial court's credibility assessment in this case.

Mr. Pickens further asserts, however, that the Wilsons knew or should have known of the zoning and subdivision requirements and that the Wilsons are at least 50% at fault in this case. The apportionment of fault in a non-jury case is a question of fact which we review with a presumption of correctness. *E.g., Lewis v. State*, 73 S.W.3d 88, 95 (Tenn. Ct. App. 2001). However, in light of Mr. Wilson's testimony in this case, we respectfully disagree with the trial court that the Wilsons were not at least 50% at fault for their injuries.

In his deposition, Mr. Wilson testified that when he built the big house in 1985, he had the property surveyed and "the house that [the Laws] [have] was on the one acre, and [his] house at that time was 6.8 acres." He further testified that he knew he was required to have a lot of at least four acres in order to build a house. Additionally, Mr. Wilson testified that he knew the Laws intended to build on their property, and that the Laws would not have bought the property had they realized they were "going to have a problem with it."

Based on our review of the record, we are convinced that at the time the property was conveyed to the Laws, neither the Laws nor the Wilsons were in fact aware of the specific requirements of the Shelby County Code pertaining to subdivision minimum lot size requirements. We do not believe Mr. Wilson intended an illegal subdivision. However, according to Mr. Wilson's deposition, Mr. Wilson knew that a four-acre minimum was required to build on his lot. Which leads us to question the reasonableness of Mr. Wilson's assertion that he believed he could sell the Laws a one-acre lot and that the Laws would be permitted to build on that lot and not "have a problem with it." Moreover, we note that the Wilsons do not allege that they inquired about the zoning or subdivision regulations or that Mr. Pickens gave them incorrect information regarding the regulations. Rather, they assert only that Mr. Pickens should have advised them of the subdivision regulations, that he failed to do so, and that this failure proximately caused their injuries.

Mr. Wilson unambiguously testified in his deposition, however, that he knew the Laws intended to build on the conveyed lot and that he knew more than one acre was required to obtain a building permit. In light of this knowledge, the evidence preponderates against the trial court's determination that the Wilson's were not at least 50% at fault for their injuries in this case, despite the alleged negligence of Mr. Pickens. Although, at the time of the sale, the Wilsons arguably were not aware of the subdivision regulations, or even that the sale resulted in a subdivision, Mr. Wilson knew that one acre was not sufficient for the intended use of the lot.

Additionally, we agree with the Wilsons that the comment by the unidentified Shelby County inspector and the issuance by Shelby County of a building permit to the Wilsons in 1985 and 1988 did not make Shelby County liable for the improper subdivision of the Wilson's property in 1992. When Mr. Wilson applied for permits to build on over four acres of land in 1985 and 1988, Shelby County was under no duty to advise him that, if he decided to subdivide his property into building lots at a future time, two-acre lots would be required.

**Holding**

The Wilsons have failed to carry their burden of proof to demonstrate that Mr. Pickens was more than 50% at fault for the injuries they sustained. We accordingly reverse the judgment of the trial court apportioning 60% of fault to Mr. Pickens. Because the Wilsons were at least 50% at fault for the damages sustained in this case, we reverse the award of damages to the Wilsons. We additionally vacate the apportionment of fault to Shelby County. In light of the foregoing, the

remaining issues are pretermitted.  Costs of this appeal are taxed to the Appellees, Rodney Wilson and Robbie Wilson.

_____
DAVID R. FARMER, JUDGE